OPINION OF THE COURT
Alan D. Marrus, J.
On October 6, 1983, at about 5:20 p.m., the defendant was observed at the Times Square subway station in Manhattan with what appeared to a police officer as a blackjack protruding from the defendant’s waistband. The police officer arrested the defendant and seized the item, which upon closer inspection turned out to be a black metal cylinder, about seven inches in length weighing less than a pound. With a flick of the wrist, a metal coil about 10 inches long is propelled out of the cylinder extending the length of the pipe to about 17 inches. At the tapered end of the coil is a one-half inch metal tip.
The defendant was issued a desk appearance ticket and subsequently arraigned on October 27,1983 upon a charge of criminal possession of a weapon in the fourth degree. (Penal Law, § 265.01.) That section provides in pertinent part: “A person is guilty of criminal possession of a weapon in the fourth degree when: (1) He possesses any firearm, electronic dart gun, gravity knife, switchblade knife, cane sword, billy, blackjack, bludgeon, metal knuckles, chuka stick, sand bag, sandclub or slungshot”.
*717 The complaint in this case initially characterized the item seized from the defendant as a “blackjack” and “telescoping blackjack”. The People subsequently moved to amend the complaint to substitute the terms “billy” and “telescoping night stick”.
The defendant has now moved to dismiss the complaint alleging that the property seized from his waistband is not a per se weapon, the mere possession of which constitutes a crime. He argues that the seized property is a “spring whip” which he purchased from the inventor, Harold Braunhut, who himself was the subject of criminal charges of criminal possession of the identical item. Since those charges were dismissed with a ruling that a “spring whip” is not a per se weapon (People v Braunhut, 101 Misc 2d 684), the defendant here asks this court for the same relief.
Is a “spring whip” a per se weapon? In Braunhut (supra), the court ruled that it was not.* Since that decision was by a court of co-ordinate jurisdiction, it is not binding on this court. There is certainly some room for interpretation here, moreover, since the Penal Law provides no definition for the terms “billy” or “bludgeon”. Thus, the court must be guided by the standard contained in section 5.00 of the Penal Law, that statutory provisions be construed “according to the fair import of their terms to promote justice and effect the objects of the law.”
While general definitions do exist for a “billy”, a “bludgeon”, and a “blackjack”, no precise distinctions between them have been defined. “When the question revolves around the nature of the particular weapon — for example, whether the object is more accurately described as a blackjack or bludgeon — the cases reveal an awareness of the basic similarities among the weapons described and show the flexible attitude of the courts in not requiring narrow specificity so long as the object can be described as a weapon generally of the kind proscribed by the statute.” (What Constitutes a “Bludgeon”, “Blackjack,” Or “Billy” Within Meaning Of Criminal Possession Statute, Ann., 11 ALR4th 1272, 1273.) A “bludgeon” has been defined as “a stick with one end loaded or thicker or heavier than the *718 other end” (People v Tate, 68 Ill App 3d 881, 882); a “billy” is regarded as “[a] small bludgeon that may be carried in the pocket; a club; especially a policeman’s club.” (Black’s Law Dictionary [4th ed], p 213.)
Courts throughout the country have applied these general definitions to a broad array of instruments: (1) a baseball bat 20 inches long, broken a few inches from the bottom of the handle, could be a billy (People v Grubb, 63 Cal 2d 614); (2) a chain about three feet long wrapped with tape, one end being thicker than the other having been looped to provide a handle, could be bludgeon or a blackjack (People v Collins, 6 Ill App 3d 616); and, (3) a sawed-off billiard cue narrower at one end and heavier at the other could be a billy (State v Witcher, 58 NJ Super 464; see, generally, Ann., 11 ALR4th 1272).
In New York, the court in People v Visarities (220 App Div 657) ruled that an iron bar 20 inches long and % inch in diameter was not a bludgeon, whereas in People v Kennedy (164 NY 449, 451), the court there characterized as a bludgeon “a lead pipe about seventeen inches in length, through which an iron rod had been inserted and wound at one end with tape”. More recently, a New York court has ruled that a broom handle 24 to 30 inches in length and taped at both ends could be a billy. (People v Talbert, 116 Misc 2d 771.)
It becomes evident from a review of the case law in this area, therefore, that bludgeons, billies, and blackjacks are not weapons uniformly constructed with precise measurements and weights. Nevertheless, there are clear standards by which such weapons may be judged. In this court’s view there are three critical factors:
(1) Is the weapon club-like?
(2) Can it render serious physical injury?
(3) Does it have any legitimate purpose other than as a weapon?
In essence, “[t]he length of the particular object is not determinative, but the purpose for which it is designed.” (People v Schoonmaker, 40 AD2d 1066.) The Legislature should not be expected to enumerate each and every prohibited weapon by specific description. “It would be a most *719 difficult if not insurmountable task to list and describe in complete detail each of the possible instruments that could be used as a weapon for the purpose of inflicting death or injury to a person.” (People v Collins, 6 Ill App 3d, at p 619.)
Applying the above criteria to a “spring whip”, the court finds that the “spring whip” is club-like, can render serious physical injury, and has no legitimate purpose other than as a weapon. The “spring whip” comes in a club-like cannister which, when worn in the waistband, has the appearance of a billy or blackjack. With a flick of the wrist, the cannister projects a metal coil with a metal tip which can poke an eye out, smash a nose, or crack a finger. The “spring whip” has absolutely no other purpose than to be a weapon, offensive or defensive. There is, thus, at least a question of fact as to whether a “spring whip” constitutes a per se weapon under section 265.01 of the Penal Law.
A question of fact is properly for a jury to decide, not a Judge (unless of course the defendant waives a jury trial). Indeed, one Appellate Division has held that whether an object is “an ‘instrument or weapon’ of the ‘kind commonly known as a blackjack’ * * * should be specifically submitted to the jury as a fact question” (People v Merrihew, 9 AD2d 981, 982 [3d Dept]). The Court of Appeals has upheld a jury charge on this very issue: “ ‘Is it a bludgeon as you understand the term, a dangerous weapon? Take it in your hands, wield it as one might, and say whether, in your judgment, that could become a dangerous weapon, a bludgeon in fact, as charged here specifically by that technical name.’ ” (People v McPherson, 220 NY 123, 126.)
The defendant’s motion to dismiss the complaint for legal insufficiency is denied. The People’s motion to amend the complaint is granted. A “spring whip” is most assuredly a weapon. Whether it is a per se weapon, the mere possession of which under New York law constitutes a crime, is for a jury to decide.
Finally, the court notes that the defendant was observed wearing this “spring whip” in his waistband while at a subway station in Times Square. According to a recent report, the Times Square subway station is the most dangerous of all the subway stations in New York City, with *720 some 279 felonies occurring there during the year. (New York Post, Jan. 26, 1984, p 57.)
The defendant here has argued that, aware of the prior court decision upholding its legality, he purchased the “spring whip” for protection and that is why he had it when he was arrested. If this is so, the defendant should make a motion to dismiss in the interest of justice.
It is the responsibility of the Transit Authority and its police force to assure the safety of subway passengers. Weapon-bearing passengers only add to the danger which already exists. Future passengers of our transit system are hereby put on notice that the possession of “spring whips”, no matter how noble the intentions of the bearer, may well result in prosecution for criminal possession of a weapon.

 The People in that case apparently conceded it was not a billy and argued only that it was a bludgeon. (People v Braunhut, 101 Misc 2d 684, 685, n 1.)