[869 NYS2d 401]

The People of the State of New York, Respondent, v Glenn Wood, Appellant.

First Department, December 9, 2008

APPEARANCES OF COUNSEL

*Center for Appellate Litigation*, New York City (*Robert S. Dean* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney*, New York City (*Britta Gilmore* and *Patrick J. Hynes* of counsel), for respondent.

**OPINION OF THE COURT**

GONZALEZ, J.P.

In order to convict a defendant of criminal possession of a weapon in the third degree for unlawfully possessing a switchblade knife that was disguised as a cigarette lighter (Penal Law § 265.02 [1]; § 265.01 [1]), must the prosecution prove that the defendant knew that he or she possessed a switchblade knife or at least that the object possessed functioned as a weapon? Or, as the People here argue, is it sufficient to prove that the defendant knew he or she possessed an object that met the statutory definition of a switchblade? Although the statute includes no express element of mental culpability and the offense has often been referred to as a crime of "strict liability," existing constitutional, statutory and case law requirements mandate that the prosecution prove that defendant knew that the object he possessed actually functioned as a weapon. Because the trial court in this case refused to adequately charge the jury on this element of knowing possession, defendant's conviction must be reversed and a new trial ordered.

The facts underlying defendant's conviction are briefly stated. Defendant and an accomplice were arrested for the commission of a robbery. During a search of defendant's person, the police recovered a combination switchblade knife and cigarette lighter. After defendant and his accomplice were tried and acquitted of the robbery charge, defendant was tried for criminal possession of a weapon in the third degree for unlawfully possessing the switchblade knife.

At the close of the prosecution's case, defendant moved for a trial order of dismissal on the ground that the People failed to introduce any evidence that he knowingly possessed a switchblade, because there was no evidence that he knew the object's character as a weapon. The court reserved decision

on the motion. During the subsequent charge conference, defense counsel requested that the jury be instructed that, in order to convict, it must find that defendant knew the object he possessed had the characteristics of a weapon and was not merely a lighter. The court denied the request to charge, stating that Penal Law § 265.01 (1) was a strict liability statute, listing the switchblade knife as a "per se weapon," citing *People v Davis* (112 Misc 2d 138 [Crim Ct, Bronx County 1981, Friedmann, J.]).

In his summation, defense counsel argued to the jury that there was no evidence that defendant used, or intended to use, the object as a knife. The prosecutor argued that the evidence showed that defendant knowingly possessed a switchblade, and, more specifically, that defendant knew that the object was a knife as well as a lighter. After summations, the trial court informed the parties that notwithstanding the prosecutor's argument that defendant's possession was knowing, it intended to charge the jury that there was "no knowledge requirement." In fact, the court charged the jury that the crime had two elements: (1) that the weapon was possessed by defendant, and (2) that it was in fact a switchblade. With respect to defendant's knowledge, the court instructed:

> "I also said that there are some things that by its nature do not require any mental element. One of them is something called a switchblade. The elements that you have to decide are: Did he have it? Is it a switchblade? Each of those things has to be proven beyond a reasonable doubt. Of course he had to know that he had the item but there is no requirement that he knew its precise nature."

Defense counsel objected to the court's charge, and further objected to the court's comparison of the switchblade/lighter to a cane sword, another per se weapon prohibited by Penal Law § 265.01 (1). Notably, the prosecutor also asked the court to clarify its charge by adding the requirement of "knowing possession," to which the court responded, "C.J.I. is not Court of Appeals."[1] The trial court ultimately overruled both objections,

---

1. The model jury charge drafted by the Committee on Criminal Jury Instructions for Penal Law § 265.01 (1) provides that a person is guilty of violating this statute when "that person *knowingly* possesses any . . . switchblade knife" (CJI2d[NY] Penal Law § 265.01 [1] [emphasis added]). The model charge further instructs that "[a] person KNOWINGLY possesses [a switch-

and defendant was found guilty of third-degree weapon possession.

On appeal, defendant argues that the court's refusal to charge that Penal Law § 265.01 (1) requires proof that he knew the object he possessed was a weapon, and not simply a lighter, deprived him of due process of law. We agree.

Penal Law § 265.01 (1) provides that "[a] person is guilty of criminal possession of a weapon in the fourth degree when . . . [h]e or she possesses . . . [a] switchblade knife." The charge is elevated to third-degree possession where, as here, the defendant "has been previously convicted of any crime" (Penal Law § 265.02 [1]). Penal Law § 265.00 (4) defines switchblade knife as "any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife."

The parties disagree as to whether a defendant's knowledge that the object possessed was a weapon is an element of the crime that must be charged. The inquiry is complicated by the fact that this switchblade knife was disguised as a cigarette lighter. Defendant concedes that the statute does not expressly require proof of knowledge that a weapon was possessed. Nevertheless, he contends that controlling case law and Penal Law article 15 together require that the prosecution prove that the defendant "knowingly" and "voluntarily" possessed a weapon, and that such weapon met the statutory definition of a switchblade.

The prosecution counters that the Legislature intentionally omitted any mental culpability requirement from Penal Law § 265.01 (1), rendering the possession of any of the "per se weapons" enumerated in this subdivision a strict liability offense. It notes that, unlike other subdivisions of Penal Law § 265.01, which include express mental culpability elements such as "knowingly" or "with intent to use the same unlawfully against another" (see Penal Law § 265.01 [2], [3], [7], [8]), subdivision (1) contains no mens rea element. This disparate treatment, the prosecution contends, is compelling evidence

---

blade knife] when that person is aware that he or she is in possession of such-[switchblade knife]" (CJI2d[NY] Penal Law § 265.01 [1]). A footnote to this model charge indicates that the "knowingly" element was added "to comport with statutory law (Penal Law § 15.05 (2)) and with case law" (CJI2d[NY] Penal Law § 265.01 [1] n 1, citing *People v Ford*, 66 NY2d 428, 440 [1985]; *People v Marino*, 212 AD2d 735, 736 [1995]; *People v Cohen*, 57 AD2d 790 [1977]).

that no mental culpability element exists in Penal Law § 265.01 (1).

We find that under current law, in order to convict a defendant of criminal possession of a weapon under Penal Law § 265.01 (1), the jury must find that the defendant's possession of the weapon is both knowing and voluntary (see *People v Persce*, 204 NY 397, 402 [1912]; see also *People v Saunders*, 85 NY2d 339 [1995]; *People v Ford*, 66 NY2d 428, 440 [1985]; Penal Law §§ 15.10, 15.00 [2]; CJI2d[NY] Penal Law § 265.01 [1]), and the jury must be adequately instructed on these elements where appropriate in a particular case.

The source of the voluntary possession requirement is article 15 of the Penal Law, which sets out the minimum requirements for criminal liability and guidelines for determining whether an offense includes an element of mental culpability. Penal Law § 15.10 provides, in relevant part, that "[t]he minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or . . . omission . . . [and] [i]f such conduct is all that is required for commission of a particular offense . . . such offense is one of 'strict liability.' " However, even with respect to a strict liability offense, a voluntary act also includes "the possession of property *if the actor was aware of his physical possession or control* thereof for a sufficient period to have been able to terminate it" (Penal Law § 15.00 [2] [emphasis added]). Thus, although Penal Law § 265.01 (1) includes no express element of mental culpability for possession of the enumerated weapons, article 15 nevertheless requires that a defendant be aware of his physical possession of one of the prohibited objects before he may be convicted.[2]

Subdivision (2) of Penal Law § 15.15 also makes it clear that the absence of an express mens rea provision in a particular statute does not necessarily mean that none exists. Subdivision (2) states:

---

**2.** The use of the term "strict liability" is really a misnomer, at least with respect to weapon possession offenses, since Penal Law article 15 and many cases clearly require an awareness of possession of the prohibited object (see Penal Law § 15.00 [2]; see also *Staples v United States*, 511 US 600, 607 n 3 [1994] ["the term 'strict liability' is really a misnomer" as "we have avoided construing criminal statutes to impose a rigorous form of strict liability"]). As it must, the prosecution in this case concedes the voluntariness requirement in Penal Law § 15.00 (2), but it argues that no additional mental culpability element may be implied into the statute.

"Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense . . . if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability."

A review of the legislative history of Penal Law § 265.01 (1) and its predecessor statute (former Penal Law § 1897) does not reveal a clear legislative intent to impose strict liability. To be sure, the exclusion of any mens rea element from subdivision (1) of section 265.01, despite its presence in other subdivisions, supports the People's argument that subdivision (1) imposes strict liability. In addition, there are several judicial decisions that refer to this particular statute as one defining an offense of "strict liability" (*see e.g. People v Saunders*, 85 NY2d at 342; *People v Simon*, 148 Misc 2d 845, 847 [Crim Ct, Bronx County 1990]; *People v Davis*, 112 Misc 2d at 139; *see also People v Messado*, 49 AD2d 560 [1975]).

Nevertheless, the prosecution's argument in support of a strict liability reading of Penal Law § 265.01 (1) is substantially weakened by the historical origins of the statute and the decades-old case law interpreting it. Regarding the statute's origins, the author of McKinney's Practice Commentary for Penal Law article 265 notes that, while some of the statutes criminalizing possession of a weapon expressly require a "knowing" culpable mental state, others are silent on the subject (*see* Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law art 265 ["Firearms and Other Dangerous Weapons"], at 85 [2000 ed]). The author states that the different treatment stems, at least in part, from the fact that all the former Penal Law weapon possession statutes, which, with rare exceptions, did not include a culpable mental state, were carried verbatim into the present weapon possession Penal Law statutes, while most of the weapon possession statutes added to the present Penal Law have incorporated the culpable mental state of "knowingly" (*id.*). Accordingly, in this commentator's view, the absence of culpable mental states from some subdivisions of section 265.01 but not others appears to be the product of drafting history, not legislative design.

More importantly, even assuming that the legislative history of section 265.01 (1) supported a reading of strict liability, New

York case law interpreting this weapon possession statute for the last 100 years has required that possession of a weapon be both knowing and voluntary. For example, in *People v Persce*, which involved a prosecution under former Penal Law § 1897 for "carry[ing] or possess[ing] any instrument or weapon . . . known as a slungshot" (204 NY at 400), the Court of Appeals upheld the authority of the Legislature, in the exercise of its police power, to prohibit the mere possession of a weapon without evidence of criminal intent to use the same. In doing so, however, the Court stated an important caveat, namely, that the possession be a "knowing and voluntary one" (*id.* at 402). Similarly, in *People v Visarities* (220 App Div 657, 658 [1927]), which involved a prosecution for possession of a "bludgeon" under section 1897, this Court held that "[p]roof of intent to use is not an ingredient of the crime charged against the defendant herein. Mere possession of the prohibited instrument, known and voluntary, constitutes the offense."

This rule requiring knowing and voluntary possession has become firmly entrenched in this State's jurisprudence (*see People v Saunders*, 85 NY2d at 341-342 ["the corpus delicti of weapons possession under Penal Law § 265.01 (1) is the voluntary, aware act of the possession of a weapon"]; *People v Ford*, 66 NY2d at 440 ["Possession third requires only that defendant's possession be knowing"]; *People v Cohen*, 57 AD2d at 791 [court erred in failing to instruct jury that in order to convict it must find "knowing possession"]; *see also* CJI2d[NY] Penal Law § 265.01 [1] n 1), and provides compelling evidence that the Legislature did not intend Penal Law § 265.01 (1) to impose strict liability. Indeed, the *Persce* and *Visarities* holdings have been on the books for almost 100 years, and the Legislature has never seen fit to alter the statutory language or otherwise attempt to eliminate the requirement of knowing possession, although it has enacted several other amendments to the statute. Under our principles of statutory construction, the Legislature is presumed to be familiar with existing decisional law, and, in this case, its failure to alter the judicially created requirement of "knowing possession" for 96 years is strong evidence that it has come to accept "knowing possession" as an element of the offense (*see People v Robinson*, 95 NY2d 179, 184 [2000]; *Matter of Knight-Ridder Broadcasting v Greenberg*, 70 NY2d 151, 157 [1987]; *Jiggetts v Dowling*, 21 AD3d 178, 184 [2005], *lv dismissed* 6 NY3d 807 [2006]; *see also* McKinney's Cons Laws of NY, Book 1, Statutes § 191, Comment ["The Legislature will

be assumed to have known of existing statutes and judicial decisions in enacting amendatory legislation"]).

Having established that possession must be knowing and voluntary, however, does not end the matter. Still remaining is the question of what degree of knowledge the defendant must have in order to be convicted under section 265.01 (1). Must the defendant know that he or she possesses a switchblade knife, or at least that the object possessed is a weapon, or is it sufficient that he or she knowingly possesses any object that meets the statutory definition of a switchblade? The Court of Appeals has not spoken directly to this issue (*see* Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law art 265, at 86 [2000 ed] ["There are issues not yet settled by the Court of Appeals as to what, if anything, besides possession, the possessor must be aware of"]).

Some trial and appellate decisions in New York have held that in order to satisfy the element of knowing possession under Penal Law § 265.01 (1), the prosecution must prove that the defendant knew he possessed a knife, or firearm, or some other weapon, but not that he knew the weapon met the statutory definition of the prohibited object (*see People v Berrier*, 223 AD2d 456 [1996], *lv denied* 88 NY2d 876 [1996] [court correctly charged that prosecution had to prove that defendant knew he had a knife in his possession, not that he knew it was specifically a gravity knife]; *People v Voltaire*, 18 Misc 3d 408, 411 [Crim Ct, Kings County 2007] [same]; *see also People v Velasquez*, 139 Misc 2d 822, 823 [Sup Ct, NY County 1988] ["New York courts and those in other jurisdictions . . . have generally declined to extend the knowledge requirement to the specific characteristics or nature of the weapon"]).

While these authorities certainly suggest that a defendant's knowledge of his or her possession of a weapon, any weapon, is the minimum requirement to satisfy due process, they are also factually distinguishable from this case because they involved weapons that were readily identifiable as such. For example, both *Berrier* and *Voltaire* involved gravity knives that presumably were readily identifiable as knife-like weapons. Thus, while this Court in *Berrier* (223 AD2d at 457) stated that "the prosecution had to prove that defendant knew he had a knife in his possession, not that he knew it was specifically a gravity knife," it is unclear, in that context, what the prosecution was required to prove. Since the gravity knife in that case was readily identifiable as a knife, the *Berrier* Court could have meant that the

prosecution merely had to prove that he knew he had an object in his possession (that obviously was a knife), not that he had to know its character as a weapon. In *Berrier*, proof of possession of the object necessarily included proof of knowledge of the nature of the object. Here, the situation is different, because proof of knowledge of possession of the object (a switchblade disguised as a cigarette lighter), is not the equivalent of proof of knowledge of the object's character as a weapon. *Berrier*, therefore, does not definitively answer the question of what degree of knowledge is required in the case of a disguised weapon.

The only reported case addressing the knowing possession requirement in the context of a disguised per se weapon is *People v Small* (157 Misc 2d 673 [Sup Ct, NY County 1993]). In *Small*, the defendant was prosecuted for possessing an electronic stun gun in violation of Penal Law § 265.01 (1) and § 265.02 (1). The defendant was alleged to have broken into a car and stolen its contents, including the alleged stun gun, which he testified he believed was a radar detector. The prosecutor instructed the grand jury that it was not required to find that the defendant knew he possessed a stun gun, but only that he knew he possessed an object that was in fact a stun gun. The defendant moved to dismiss the indictment as defective based on this instruction.

In granting the motion to dismiss, the trial justice reviewed both the legislative history of section 265.01 (1) and the *Persce* and *Visarities* decisions, and concluded that "our courts, in effect, do read a mens rea requirement into the possession of weapon statutes," which requires the prosecution to prove that the possession is both knowing and voluntary (*Small*, 157 Misc 2d at 676). In addition, the court examined the history of imposing strict liability for public welfare offenses and determined that a traditional prerequisite for such liability is that the prohibited object be readily identifiable as an inherently dangerous weapon or article (*id*. at 679 ["the power to prohibit the act of possession depends upon the identity of the thing possessed as an inherently dangerous object not readily adapted to innocent use"]). Ultimately, the *Small* court held that, because the alleged stun gun was not readily identifiable as a weapon, strict liability was inappropriate and the court was required to read into the statute a knowledge requirement in order to preserve its constitutionality (*id*. at 681).

We are convinced that Justice Rothwax's analysis in *Small* is both correct and applicable to this case. It is now beyond ques-

tion that the Legislature may dispense with a mental culpability requirement with respect to certain public welfare offenses (*see Persce*, 204 NY at 401-402; *Visarities*, 220 App Div at 658-659; *see also People v Munoz*, 9 NY2d 51, 58-60 [1961]; *Staples v United States*, 511 US at 606-607; *United States v Balint*, 258 US 250, 252-254 [1922]). For a weapon possession offense to qualify, however, the object possessed must be one that is inherently dangerous and, therefore, "not likely to be found on innocent persons" (*Munoz*, 9 NY2d at 59; *Staples*, 511 US at 607 ["our cases recognizing such offenses involve statutes that regulate potentially harmful or injurious items"]).

In addition, the cases have generally required that the inherently dangerous nature of the prohibited object be readily apparent, so as to put the object's possessor on clear notice that the object is potentially subject to government regulation or prohibition (*see Persce*, 204 NY at 402 [proper exercise of police power to prohibit mere possession of certain weapons based on their "well-understood character . . . as dangerous and foul weapons seldom used for justifiable purposes"]; *Visarities*, 220 App Div at 658 ["To base a conviction on mere possession it must clearly appear that the thing possessed answers the description of one of the prohibited instruments or weapons"]). Thus, the underlying rationale for imposing strict liability for public welfare offenses is that the element of mental culpability may be eliminated only because the objects that are the subject of the legislation are so obviously and inherently dangerous that anyone who possesses them should bear the burden of determining, at their own peril, whether they are prohibited by law (*Small*, 157 Misc 2d at 679-680; *Staples*, 511 US at 607).[3]

As should be plain, the rationale for imposing strict liability for public welfare offenses is inapplicable to the instant case. Because the object possessed by defendant appeared externally to be a cigarette lighter (notwithstanding that it also functioned as a switchblade knife), it was not the type of object that is readily ascertainable as inherently dangerous. Given the

---

**3.** The Supreme Court cases, such as *Staples*, also note two additional characteristics common to public welfare offenses: a relatively light penalty and a potential for difficulty in proving guilty knowledge under the statute (*see Staples*, 511 US at 616-617; *Morissette v United States*, 342 US 246, 253-256 [1952]; *Balint*, 258 US at 251-252). While both of these factors exist here, we still cannot find Penal Law § 265.01 (1) to be a public welfare offense imposing strict liability in its most rigorous form, at least in this circumstance, because a disguised switchblade knife is not a readily identifiable dangerous weapon.

ambiguous nature of the object possessed, notice that it was potentially subject to regulation cannot be imputed to defendant and, accordingly, the predicate for strict liability is absent.

Where the nature of the object possessed fails to provide notice to the possessor that the object may be subject to government regulation or prohibition, it would violate principles of due process to allow a conviction without proof of mental culpability (*Small*, 157 Misc 2d at 679 ["In order to comport with basic principles of due process of law, proof of some awareness of wrongdoing is ordinarily required before criminal sanctions may be imposed"]). As the Supreme Court concluded in *Staples* (511 US at 614-615), "the Government's construction of the statute potentially would impose criminal sanctions on a class of persons whose mental state—ignorance of the characteristics of weapons in their possession—makes their actions entirely innocent."[4]

In this case, unless the jury was instructed that the defendant had to "knowingly" possess a weapon, specifically a knife, it could convict defendant of possessing what he believed was a cigarette lighter—totally innocent conduct. In order to satisfy the requirements of due process, we agree with the *Small* court and the model jury charge that an element of knowing posses-

---

4. *Staples* goes one step further than *Small* and *Berrier* by requiring that the defendant know that the rifle in his possession was capable of firing automatically, thus rendering it a "firearm" within the meaning of the National Firearms Act (26 USC §§ 5801-5872) (511 US at 602, 615). The Court reasoned that in light of the "long tradition of widespread lawful gun ownership by private individuals in this country" (*id.* at 610), the mere possession of a rifle by a person who may not know of its automatic firing capability would not put such person on notice of potential governmental regulation (*id.* at 610-611). The merit of this conclusion aside, we find this case distinguishable to the extent that defendant's possession of a cigarette lighter that he knows also functions as a weapon would be sufficient to put him on notice of the likelihood of government regulation, without specific knowledge that it constitutes a switchblade under the statute. Many federal and state cases have similarly distinguished *Staples* on this ground (*see e.g. United States v Erhart*, 415 F3d 965, 969 [8th Cir 2005], *cert denied* 546 US 1156 [2006] [where character of weapon was "quasi-suspect," such as sawed-off shotgun, government was not required to prove possessor's knowledge of specific characteristics of weapon that brought it within scope of statute]; *United States v Weintraub*, 273 F3d 139, 149-151 [2d Cir 2001] [government only required to prove defendant's knowledge that substance involved was asbestos, not that asbestos was of a type sufficient to trigger statutory work-practice standard]; *State v Jordan*, 89 Ohio St 3d 488, 733 NE2d 601 [2000] [state not required to prove defendant's knowledge that shotgun had barrel of less than 18 inches]; *Moore v United States*, 927 A2d 1040, 1055 [DC 2007] [government not required to prove that defendant knew firing capability of handgun]).

sion must be read into the statute (*see Small*, 157 Misc 2d at 681; *see also People v Finkelstein*, 9 NY2d 342, 344-345 [1961] [reading a requirement of scienter into statute prohibiting possession of obscene material for sale]; *Carter v United States*, 530 US 255, 269 [2000] ["(t)he presumption in favor of scienter requires a court to read into a statute only that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct'"]).

In this particular case, the jury should have been instructed that the People were required to prove beyond a reasonable doubt that defendant knowingly possessed a weapon, to wit, a knife, and that such weapon met the statutory definition of a switchblade knife.[5] The failure to properly instruct the jury on this element of the crime charged was reversible error, and requires a new trial (*see People v Haddock*, 48 AD3d 969, 970-971 [2008] [due process considerations required that court instruct jury that defendant "knowingly" violated the registration requirements of the Sex Offender Registration Act, notwithstanding absence of mental culpability requirement in statute]).

Accordingly, the judgment of the Supreme Court, New York County (Edward J. McLaughlin, J.), rendered April 25, 2006, convicting defendant, after a jury trial, of criminal possession of a weapon in the third degree, and sentencing him, as a second felony offender, to a term of 2½ to 5 years, should be reversed, on the law, and the matter remanded for a new trial in accordance herewith.

BUCKLEY, MOSKOWITZ, RENWICK and DEGRASSE, JJ., concur.

Judgment, Supreme Court, New York County, rendered April 25, 2006, reversed, on the law, and the matter remanded for a new trial in accordance herewith.

---

**5.** In the case of an *undisguised* switchblade knife, the court may instead use the model jury instruction that defendant "knowingly possesses [a] . . . switchblade knife" (CJI2d[NY] Penal Law § 265.01 [1]), since, in that circumstance, the knowing possession of the object would necessarily include knowledge of its character as a knife. If, after receiving this instruction, the jury questioned whether the defendant was required to know that the knife actually "has a blade which opens automatically by hand pressure applied to a button, lever, spring or other device in the handle of the knife" (Penal Law § 265.00 [4]), the court should answer in the negative, and provide a supplemental instruction that, although that specific knowledge is not required (*Berrier*, 223 AD2d at 457), the defendant did have to know that he possessed a weapon.